STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 21-89 consolidated with WCA 20-418


ROBERT JAMES LEE GUIDRY

VERSUS

WORKNET 2000, INC., GAIENNIE LUMBER COMPANY, LLC,
AND JOSEPH W. JOHN


**********

APPEAL FROM THE
THE OFFICE OF WORKERS' COMPENSATION – DISTRICT 4
PARISH OF LAFAYETTE, NO. 18-07443
ANTHONY PALERMO, WORKERS' COMPENSATION JUDGE

**********

**SHARON DARVILLE WILSON**
**JUDGE**

**********

Court composed of Van H. Kyzar, Candyce G. Perret, and Sharon Darville Wilson, Judges.


**AFFIRMED.**

**David Keith Johnson**
**Johnson, Stiltner & Rahman**
**P.O. Box 98001**
**Baton Rouge, LA 70898-8001**
**(225) 231-0875**
**COUNSEL FOR DEFENDANT APPELLEE:**
       **Worknet 2000, Inc.**

**Mark Alfred Ackal**
**Attorney at Law**
**P. O. Box 52045**
**Lafayette, LA 70505**
**(337) 237-5500**
**COUNSEL FOR DEFENDANT APPELLEE:**
       **Gaiennie Lumber Company, LLC.**
       **Joseph W. John**

**Scott F. Higgins**
**LaBorde Earles**
**P. O. Box 80098**
**Lafayette, LA 70598-0098**
**(337) 261-2617**
**COUNSEL FOR PLAINTIFF APPELLANT:**
       **Robert James Lee Guidry**

**WILSON, Judge.**

These consolidated appeals stem from a forklift injury that took place at Gaiennie Lumber Company, LLC (Gaiennie) while Plaintiff/Appellant, Robert Guidry, performed work there as a lumber puller. Mr. Guidry filed a workers' compensation claim against his employer, Worknet 2000 Inc. (Worknet), which was denied after a trial by the workers' compensation judge (WCJ). Mr. Guidry also filed a tort lawsuit against Worknet, Gaiennie, and the forklift operator, Joseph John, in the district court. The tort claim was dismissed against Gaiennie on a motion for summary judgment. Mr. Guidry now appeals both judgments. For the reasons expressed below, we affirm the judgments of the trial court and the WCJ.

I.

**ISSUES**

In the consolidated appeals, Mr. Guidry raises various assignments of error. We must decide:

(1) whether the WCJ committed manifest error when it found that Robert Guidry was engaged in horseplay at the time of the subject accident, and therefore outside of the course and scope of his employment;

(2) whether the WCJ erred when it failed to find that any horseplay by Mr. Guidry ended prior to the subject accident;

(3) whether the WCJ erred by failing to liberally construe the Louisiana Workers Compensation Act in this matter by finding that Mr. Guidry was engaged in horseplay at the time of the subject accident;

(4) whether the WCJ erred in finding the testimony of Joseph John credible, in light of the undisputed evidence that he gave multiple

inconsistent accounts regarding how the accident occurred;

(5) whether the WCJ committed manifest error when it failed to award Mr. Guidry indemnity and medical workers' compensation benefits as a result of the subject accident;

(6) whether the WCJ committed manifest error when it failed to find that Worknet acted arbitrarily, capriciously and without probable cause in failing to pay indemnity and medical benefits;

(7) whether the WCJ committed manifest error when it failed to award penalties and attorney's fees;

(8) whether the trial court committed manifest error when it found that workers' compensation was Mr. Guidry's exclusive remedy against Gaiennie for the negligent acts of Mr. John;

(9) whether the trial court committed manifest error when it found that Mr. Guidry was precluded from bringing a negligence claim against Gaiennie upon being found that he was not entitled to workers' compensation benefits;

(10) whether the trial court committed manifest error when it failed to find that workers' compensation is an employee's exclusive remedy against his employer only if the employee is entitled to workers' compensation under the Workers' Compensation Act for a particular injury, sickness, or disease;

(11) whether the trial court erred when it failed to find that questions of fact existed regarding whether Mr. John committed an intentional act for which Gaiennie could be found vicariously liable;

(12) whether the trial court erred when it failed to find that questions of fact existed regarding whether Gaiennie committed independent acts of negligence for which it could be liable to the plaintiff; and

2

(13)  whether the trial court committed manifest error when it granted Gaiennie's Motion for Summary Judgment.

II.

**FACTS AND PROCEDURAL HISTORY**

On July 10, 2018, Mr. Guidry was employed by Worknet and was working at Gaiennie as a lumber puller. That day he was assigned to work alongside Marion Sam. Mr. Guidry and Mr. Sam were working on pulling an order when a co-employee, Joseph John, arrived on a forklift and began talking with the others. Mr. John and Mr. Guidry were joking around, and Mr. Guidry climbed onto the forklift. At some point, Mr. John began doing donuts while Mr. Guidry held onto the machine. In the process of doing these donuts, Mr. Guidry either got off or fell off the forklift, which then rolled over his right leg. As a result of the incident, Mr. Guidry sustained injuries and was totally disabled for a period of time to be determined by the court.

Mr. Guidry filed a workers' compensation claim against his employer, Worknet, and its insurer Louisiana Workers' Compensation Corporation (LWCC). Worknet and LWCC denied Mr. Guidry's claim based on the belief that Mr. Guidry's injury arose out of "horseplay", and therefore, he was not entitled to benefits under La.R.S. 23:1031(D). No workers' compensation indemnity benefits or medical expenses had been paid by LWCC or Worknet in connection with the incident. Mr. Guidry claimed the horseplay had ended before the accident occurred. He further contended that Worknet and LWCC acted arbitrarily, capriciously and without probable cause in failing to pay indemnity payments, and they also failed to

3

pay medical expenses/benefits when submitted, failed to authorize needed medical treatment, and that penalties and attorney's fees should be imposed.

The matter was tried on January 16, 2020, and taken under advisement. The trial testimony included the live testimony of Mr. Guidry, Mr. Sam, and Mr. Guidry's supervisor, Gino Lamonte, as well as the deposition testimony of Mr. John. On February 21, 2020, the court issued its reasons for ruling and found that Mr. Guidry was engaged in horseplay at the time of his accident and therefore not within the course and scope of his employment. The WCJ held that Mr. Guidry was not owed workers' compensation benefits and there was no basis for an award of penalties and attorney's fees. A final, appealable judgment was signed March 17, 2020, and Mr. Guidry filed a motion for devolutive appeal on May 4, 2020.

In addition to the workers' compensation claim, in November 2018, Mr. Guidry filed suit in the 27th JDC against Worknet, Gaiennie, and Mr. John, asserting negligence, intentional tort, and vicarious liability claims. Gaiennie filed a motion for summary judgment contending that as Mr. Guidry's statutory employer, it was immune from tort liability as Mr. Guidry's exclusive remedy was under the Louisiana Workers' Compensation Act. The motion was heard on October 1, 2020, and the trial court granted the motion, dismissing all of Mr. Guidry's claims against Gaiennie with prejudice. The judgment was signed on November 2, 2020, and Mr. Guidry filed a motion for devolutive appeal on December 22, 2020. The two appeals were consolidated by this court on March 15, 2021.

III.

**STANDARD OF REVIEW**

4

When reviewing factual determinations of the WCJ, we apply the manifest error/clearly wrong standard of review. *Ashworth v. Big Easy Foods of LA, LLC*, 13-650 (La.App. 3 Cir. 12/11/13), 128 So.3d 672. As long as the findings are reasonable and supported by the record, an appellate court cannot overturn those findings. *Id.* "When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). Appellate courts review summary judgments de novo, applying the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991). A motion for summary judgment shall only be granted when there are no genuine issues of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966.

IV.

## LAW AND DISCUSSION

### Workers' Compensation Claim

Mr. Guidry contends that the WCJ committed manifest error when it found that he was engaged in horseplay at the time of his accident and was therefore outside of the course and scope of his employment. Louisiana Revised Statutes 23:1031(A) provides that "[i]f an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated." The key to recovery is that the injury arises out of the course and scope of the employment.

However, La.R.S. 23:1031(D) provides that "[a]n injury by accident shall not be considered as having arisen out of the employment and is thereby not covered by the provisions of this Chapter if the injured employee was engaged in horseplay at the time of the injury." Gaiennie asserts that Mr. Guidry was engaged in horseplay and that this horseplay led to his injury. In contrast, Mr. Guidry asserts that while he did engage in some horseplay with Mr. John, at the time of his injury he was in the process of returning to his job duties when his co-worker knocked him down with the forklift and rolled over his leg.

The record evidence consists of the trial testimony of Mr. Guidry, Mr. Sam, and Mr. Lamonte, a Gaiennie supervisor, as well as the deposition testimony of Mr. John. All the witnesses agree that the accident occurred around 10:30 a.m. in Warehouse 1. After Mr. John showed up on the forklift, the men began talking and joking around, then Mr. Guidry decided to hop on the side of the forklift. Mr. Guidry and Mr. John were still joking around when Mr. John began doing donuts with the forklift. They all agree that Mr. Guidry did not ask to ride on the lift, nor was he invited to do so. Similarly, Mr. John never asked Mr. Guidry if he wanted to do donuts. The forklift completed almost two complete revolutions, and Mr. Guidry was laughing the entire time. The only real dispute is whether Mr. Guidry asked to stop and get off the forklift before the accident occurred.

According to Mr. Guidry, during the first rotation he laughed as the forklift spun around, but near the end of the second donut, he asked Mr. John to stop. Mr. Guidry alleges that Mr. John stopped the forklift, which he then got off with the intention of returning to work. As he took two steps back onto the ground, Mr. John did another donut, knocking Mr. Guidry to the ground, and rolling over his right leg. In Contrast, both Mr. Sam and Mr. John testified that after the second full rotation

6

and before the completion of the third, Mr. Guidry fell, slipped, or flew off the forklift. They both attest that Mr. Guidry never asked to stop, and the forklift did not stop until after the accident occurred.

In its oral reasons for judgment, the WCJ found the testimony of Mr. John and Mr. Sam very credible, and the testimony of Mr. Guidry less credible based on his demeanor, actions in court, and his presentation of the evidence. The WCJ chose to follow the version of events provided by Mr. Sam and Mr. John, and not that of Mr. Guidry. When making credibility determinations, the findings of the trier of fact are entitled to great deference. *Rosell*, 549 So.2d at 844. After reviewing the record, we cannot say that this determination was manifestly erroneous.

While Mr. Guidry consistently relayed the same version of events, his version is inconsistent with that of the other two witnesses to the accident. Mr. Guidry admitted that he was engaged in horseplay with Mr. John when he climbed onto the forklift, and although he never asked Mr. John to do donuts, he continued to joke and laugh with Mr. John for the duration of at least one full donut. A trier of fact could reasonably determine that although things may have been initiated by Mr. John, based on his behavior in response, Mr. Guidry was in fact engaged in horseplay. The WCJ found that this horseplay only came to an end when the accident occurred. As such, we find that the WCJ did not commit manifest error when it found that Mr. Guidry was engaged in horseplay at the time of his injury and, therefore, outside the course and scope of his employment. We further find no error regarding the WCJ's failure to find that any horseplay by Mr. Guidry ended prior to the subject accident.

In his next assignment of error, Mr. Guidry contends the WCJ erred by failing to liberally construe the Louisiana Workers' Compensation Act when finding

that Mr. Guidry was engaged in horseplay at the time of the accident. We disagree.

Mr. Guidry looks to *Sevin v. Schwegmann Giant Supermarkets, Inc.*, 94-1859, p. 4

(La. 4/10/95), 652 So.2d 1323, 1325, which states, "[w]orkers' compensation laws

are to be liberally interpreted in favor of protecting workers from the economic

burden of work-related injuries." However, in 2012, the legislature amended

La.R.S. 23:1020.1 which provides:

> D. Construction. The Louisiana Workers' Compensation Law shall be construed as follows:
>
> (1) The provisions of this Chapter are based on the mutual renunciation of legal rights and defenses by employers and employees alike; therefore, it is the specific intent of the legislature that workers' compensation cases shall be decided on their merits.
>
> (2) Disputes concerning the facts in workers' compensation cases shall not be given a broad, liberal construction in favor of either employees or employers; the laws pertaining to workers' compensation shall be construed in accordance with the basic principles of statutory construction and not in favor of either employer or employee.
>
> (3) According to Article III, Section 1 of the Constitution of Louisiana, the legislative powers of the state are vested solely in the legislature; therefore, when the workers' compensation statutes of this state are to be amended, the legislature acknowledges its responsibility to do so. If the workers' compensation statutes are to be liberalized, broadened, or narrowed, such actions shall be the exclusive purview of the legislature.

In the present case, the question of whether Mr. Guidry was engaged in horseplay is

clearly a factual dispute.

Though the statute itself is to be liberally construed, this case does not

involve questions of statutory interpretation, but merely questions of fact, which

"shall not be given a broad, liberal construction in favor of either employees or

employers[.]" La.R.S. 23:1020.1(D)(2). The interpretation of any statute "begins with the language of the statute itself." *Arabie v. CITGO Petroleum Corp.*, 10-2605, p. 4 (La. 3/13/12), 89 So.3d 307, 312. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.Civ.Code art. 9. Louisiana Revised Statutes 23:1031(D) unambiguously states that "[a]n injury by accident shall not be considered as having arisen out of the employment and is thereby not covered by the provisions of this Chapter if the injured employee was engaged in horseplay at the time of the injury." The only relevant inquiry in this case is whether, as a matter of fact, Mr. Guidry was engaged in horseplay at the time of the injury.

Mr. Guidry asserts that we must look to his actions, and not those of any other party. He is correct. Looking solely at the actions of Mr. Guidry we see that he deliberately climbed onto the side of the forklift, in knowing violation of company policy, and he was laughing while the donuts were being executed. According to the testimony of two witnesses, Mr. Guidry never attempted to prevent or stop the spinning. Although he may not have initiated the movement, judging by his reaction, the WCJ could reasonably infer that he consented to the activity. Thus, we find no merit in the foregoing assignment of error.

On appeal, Mr. Guidry asserts that the WCJ erred in finding the testimony of Mr. John credible, noting that he gave multiple inconsistent accounts of the accident. The record does show that there are inconsistencies between Mr. John's prior statements and his deposition testimony. In the deposition testimony, Mr. John explains that although he initially recounted a different version of events, he only did so because he was attempting to help Mr. Guidry. The trial testimony

9

of Mr. Lamonte, a supervisor, reveals that Mr. John initially said the injury resulted from an accident after he hit a cart which then hit Mr. Guidry's leg. Mr. Lamonte went on to testify, however, that shortly after this, Mr. John came to him and told him the accident happened because he was doing donuts with Mr. Guidry on the forklift. This was consistent with the version of events given in his deposition testimony, as well as with the version given by Mr. Sam.

Mr. Sam is an independent witness and is in no way implicated by the events of this case. His trial testimony and prior statements consistently relay the same version of events. The only discrepancy in Mr. Sam's testimony is a change from saying Mr. Guidry slid off the forklift to saying he flew off the forklift. This difference is minor considering that both terms suggest that Mr. Guidry involuntarily exited the forklift. Nothing in the record reveals that Mr. Sam's credibility was ever in question. Accordingly, we do not find that the WCJ erred in finding the deposition testimony of Mr. John credible.

Mr. Guidry also contends that the WCJ committed manifest error when it failed to award him indemnity and medical workers' compensation benefits as a result of the subject accident. As the WCJ found that Mr. Guidry was engaged in horseplay at the time of the injury, according to La.R.S. 23:1031(D), he was outside the course and scope of his employment. Therefore, Mr. Guidry is not entitled to workers' compensation benefits. Consequently, we find that the WCJ did not err when it failed to award Mr. Guidry with workers' compensation benefits.

In his last two assignments of error, Mr. Guidry avers that the WCJ committed manifest error when it failed to find that the defendant acted arbitrarily, capriciously and without probable cause in failing to pay indemnity and medical benefits, and when it failed to award penalties and attorney's fees. Based on our

previous holdings, we find that these assignments also lack merit. Louisiana Revised

Statutes 23:1201 provides for the award of penalties and attorney fees as follows:

> F. Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim[.]

The statute then goes on to state that "[t]his Subsection shall not apply

if the claim is reasonably controverted or if such nonpayment results from conditions

over which the employer or insurer had no control." La.R.S. 23:1201(F)(1). Our

supreme court has explained,

> In general, one can surmise from the plain meaning of the words making up the phrase "reasonably controvert" that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.

*Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98); 721 So.2d 885, 890.

Worknet and Gaiennie failed to pay benefits to Mr. Guidry on the basis that his injury

was not covered by workers' compensation benefits due to his horseplay. This is

clearly provided for by La.R.S. 23:1031(D), and under this provision, the employers

11

would not be required to pay workers' compensation benefits.  Thus, they reasonably controverted Mr. Guidry's claim and are not subject to penalties and attorney fees.

## Motion for Summary Judgment

Having affirmed the decision of the WCJ to deny workers' compensation benefits, we now turn to Mr. Guidry's tort claim against Gaiennie. The crux of that appeal is whether the trial court committed manifest error when it found that workers' compensation was Mr. Guidry's exclusive remedy against Gaiennie and granted Gaiennie's motion for summary judgment.

"[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."  La.Code Civ.P. art. 966(A)(3).  The courts have explained that, "a 'genuine issue' is a 'triable issue,' an issue in which reasonable persons could disagree." *Champagne v. Ward*, 03-3211, p. 5 (La. 1/19/05), 893 So.2d 773, 777.  "A fact is 'material' when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751.  Since Gaiennie would not bear the burden of proof at trial, it is only required to point out the absence of factual support for one or more elements essential to Mr. Guidry's claim to satisfy a motion for summary judgment.  La.Code Civ.P. art. 966(D)(1).

Gaiennie's motion for summary judgment rests primarily on the contention that Mr. Guidry's exclusive remedy against Gaiennie was through workers' compensation, and therefore he is restricted from bringing an action in tort. Louisiana Revised Statutes 23:1032(A)(1)(a) provides:

> Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.

Both parties establish Gaiennie's status as a principal, as defined in La.R.S. 23:1032(A)(2), as well as the statutory employer of Mr. Guidry. As the employer, Gaiennie would be immune from tort liability under the exclusive remedy protections of La.R.S. 23:1032.

Mr. Guidry asserts that the exclusive remedy provision only applies if one is entitled to workers' compensation under the act for a particular injury, sickness, or disease. As discussed previously, La.R.S. 23:1031(D) provides, "[a]n injury by accident shall not be considered as having arisen out of the employment and is thereby not covered by the provisions of this Chapter if the injured employee was engaged in horseplay at the time of the injury." Mr. Guidry contends that since the WCJ found that he was engaged in horseplay at the time of his injury and therefore denied workers' compensation benefits, he now cannot be denied the opportunity to bring his claim in tort. After reviewing the law on this matter, we find that Mr. Guidry is incorrect in his assertion.

In support of his argument, Mr. Guidry points to *O'Regan v. Preferred Enterprises, Inc.*, 98-1602 (La. 3/17/00), 758 So.2d 124. In that case, a plaintiff was denied workers' compensation benefits under the non-occupational presumption

found in La.R.S. 23:1021.1(D) for an occupational disease contracted in the first twelve months of employment. The Supreme Court held that "the presumption throws the employee outside of the act; therefore, the exclusivity provision of [La.R.S.] 23:1031.1(H) is not applicable to the employee, and the employee may proceed in tort against her employer." *O'Regan*, 758 So.2d at 134. However, the Supreme Court goes on to state, "[w]e must also distinguish these cases from cases where a covered claim fails because the employee does not meet his burden of proof as to a component of his case other than for basic coverage of the Act." *Id.* at 138. As an example, the Supreme Court pointed to a case which is factually similar to the one at hand.

> [I]n *Decius v. Marriott Corp.*, 402 A.2d 841 (D.C.App.1979), the employee was injured when struck by a fellow employee while on lunch break. The employee sought, but was denied workers' compensation. The employee then sued in tort. The court held that the Workers Compensation Act's exclusive remedy provision barred the tort suit. The court reasoned that the employee had a common-law remedy only if the act had not covered his claim. The court also reasoned that while the employee's injuries were compensable under the act, the employee's compensation claim was denied because they arose from his own wilful [sic] misconduct, i.e., he provoked the altercation. Thus, the act provided basic coverage to the employee, but he failed to prove that his injuries were "accidental."

*Id.*

The facts in the instant matter are distinguishable from *O'Reagan* and are more in line with those in *Decius*. At the summary judgment hearing, the court pointed out that in *O'Reagan*, "it wasn't an action by the employee that precluded them from having a right in comp. This one is." Unlike in *O'Reagan*, Mr. Guidry's injury would have been covered under the act but for his own engagement in

14

horseplay which caused his injury. As such, the act provided basic coverage to Mr. Guidry, but like *Decius*, he failed to prove that his injuries were "accidental." Consequently, Mr. Guidry's exclusive remedy remains in workers' compensation. The trial court reasoned,

> The fact that the Workers' Comp Act has an exclusion because of Mr. Guidry's own behavior, that's completely different than some of the cases cited by plaintiff, in opposition, to say well, because this malady isn't covered by workers' comp, that's different. This is an exclusion because of the plaintiff's own behavior[.]

We find that the trial court did not err when it found that workers' compensation was Mr. Guidry's exclusive remedy against Gaiennie for the negligent acts of Mr. John, and that he was precluded from bringing a negligence claim against Gaiennie. We also find no error when the trial court failed to find that the exclusive remedy provision only applies if the employee is entitled to compensation for a particular injury or failed to find that questions of fact existed regarding whether Gaiennie committed independent acts of negligence.

Although Mr. Guidry is subject to the exclusive remedy provision of La.R.S. 23:1032, the immunity from civil liability does not extend to injuries resulting from intentional acts. Mr. Guidry alleges that his injuries resulted from the intentional acts of Mr. John for which Gaiennie is vicariously liable.

The Louisiana Supreme Court explained the requirements for vicarious liability in *Baumeister v. Plunkett*, 95-2270, pp. 3-4 (La. 5/21/96), 673 So.2d 994, 996.

> The law in this area is clear that an employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment. *Orgeron v. McDonald*, 93–1353 (La. 7/5/94), 639 So.2d 224, 226. The course of employment

15

test refers to time and place. *Benoit v. Capitol Manufacturing Co.*, 617 So.2d 477, 479 (La.1993). The scope of employment test examines the employment-related risk of injury. Id.

According to Louisiana Civil Code article 2320, "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." In fact, this Court has held that in order for an employer to be vicariously liable for the tortious acts of its employee the "tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest.*" Barto v. Franchise Enterprises, Inc.*, 588 So.2d 1353, 1356 (La.App. 2d Cir.1991), *writ denied*, 591 So.2d 708 (1992) (quoting *LeBrane v. Lewis*, 292 So.2d 216, 217, 218 (La.1974)).

"An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours." *Scott v. Commercial Union Ins. Co.*, 415 So.2d 327, 329 (La.App. 2d Cir.1982) (citing *Bradley v. Humble Oil & Refining Co.*, 163 So.2d 180 (La.App. 4th Cir.1964)). "Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective." *Id.*

Mr. Guidry's injury was a result of him falling off the forklift while Mr. John was doing donuts. The submitted evidence reveals that Mr. Guidry and Mr. John were clowning around and engaged in horseplay when the injury occurred. The record shows that nothing they were doing was within the ambit of their assigned duties, and in fact their behavior was strictly prohibited by company policy. Mr. Guidry failed to produce any evidence that would suggest the men were acting within the scope of employment when the injury occurred. Thus, there was no genuine issue of material fact.

Since Mr. Guidry will not be able to prove liability as to Gaiennie, there are no genuine issues of material fact, and Gaiennie is entitled to judgment as a matter of law. We find that the trial court did not err in granting Gaiennie's motion for summary judgment dismissing them from the case.

V.

## <u>CONCLUSION</u>

For the foregoing reasons, the judgments of the trial court and WCJ are affirmed. Costs of this appeal are assessed to plaintiff/appellant, Mr. Guidry.

**AFFIRMED.**